In the Matter of the Accounting of the MARINE MIDLAND TRUST. COMPANY OF ROCHESTER, as Executor of and Trustee under the Will of FRANK WELLS, Deceased, Appellant-Respondent. LEWIS A. WELLS et al., Respondents-Appellants.

Fourth Department, May 20, 1971.

*Johnson, Reif & Mullan (Byron Johnson* and *George A. Schell* of counsel), for appellant-respondent.

*Harris, Carroll & Creary (Charles M. Carroll* of counsel), for Lewis A. Wells and others, respondents-appellants.

*Whitbeck & Holloran* (*Vito J. Cassan* of counsel), for Ruth Musfeldt and others, respondents-appellants.

*Dean J. Fero* for Doris Gruschow, respondent-appellant.

*J. Paul Brennan* (*William Centner* of counsel), guardian ad litem for infants, respondents-appellants.

GABRIELLI, J. The resolution of these cross appeals involves a construction of decedent's will, a determination whether certain farming operations were being conducted by decedent in partnership with his three sons, and the status of title to three farms.

Frank Wells died on March 10, 1969 and was survived by three sons and five daughters. By his will executed on September 13, 1968 he devised and bequeathed his estate to the petitioner, in trust, for the benefit equally of his eight children with the remainder to their issue. The principal assets are three farms valued at $267,300 and livestock and farm equipment valued at $14,950, the latter of which are not the subject of any controversy on these appeals. All three farms, recorded in decedent's name, had been worked as a dairy farm and the livestock and equipment referred to, were used on the farm.

The executor-trustee (petitioner) has filed a petition for the judicial settlement of its intermediate account and seeks a determination of the title to the farm and the ownership of the livestock and farm equipment, as well as a declaration that it has general authority to sell the farm. Objections to the account were filed by the three sons (objectants) in which they assert they were partners with decedent in the operation of the farm and they also claim title thereto including the livestock and farm equipment thereon. Decedent's daughters (respondents) filed replies controverting these objections.

To set the stage for a discussion of the issues a recitation of the background facts is in order. Decedent purchased the three farms separately, the first acquisition having occurred in 1937. The other two farms were acquired in 1939 and 1944, title being taken in the name of decedent and his wife, who later predeceased him. Thereafter, title to all three farms continued in his name. When each son attained the age of 14, he quit school and went to work full time on the farm. They have continued to work there since. As each became married, he received wages of $50 a month, his maintenance and the free use of a residence on the farm. Thereafter and for some six years prior to decedent's death he paid each son a salary of $300 per month plus the free use of a residence. Throughout all this time,

decedent made all decisions relating to the financial operation and management of the farm and objectants performed the required labor to operate it. All income realized from the sale of produce and milk sold from the farm was received by and paid to decedent, and all the proceeds from the operation of the farm went into his personal account. Decedent consistently filed individual personal and farm income tax returns which showed deductions for wages paid to the sons. No partnership tax return was ever filed. Additionally, all real estate taxes were paid by decedent and taken by him as an income tax deduction. It also appears that the objectants filed individual returns and never, of course, deducted any losses from the farm operation or reported any profits therefrom, reporting as income only the salary paid by decedent. Of further interest, each continued to receive his salary, despite business losses sustained by decedent during certain years. Significantly, decedent recited in paragraph VI of his will that '' I presently own certain farm properties which are being operated by (my) sons for me '', following which he made certain provisions for the continuance of the operation of the farm.

On the other hand, there is testimony that objectants had purchased farm equipment and livestock with their own funds; that decedent considered the farm operation '' a four-way deal ''; that the farm was '' all theirs (decedent and the three sons) together '', and they were to '' work and sell together ''; that the farms '' were his and theirs together ''; that he '' bought them (the farms) for the boys ''; that '' the boys owned the farms '' and that in 1955 decedent had prepared a personal inventory of the farm property in which, after totaling the value, he divided the total thereof by four and made the statement that '' each share including my share is $11,230 ''. Accordingly, the Surrogate found that a partnership existed among decedent and objectants and directed that there be an accounting of the assets and profits of the partnership from 1943 until decedent's death and, further, that the objectants be awarded a ¾ interest in the partnership profits.

Objectants now contend that, having found that a partnership existed, the court was also required to include the farm property as an asset of the partnership, that decedent had title to the farm as trustee for the benefit of the objectants and, hence, that a constructive trust should be imposed upon the farm. On the other hand, petitioner and respondents assert that no partnership existed at all and that legal and equitable title to the farm remained in decedent at all times.

We agree with the Surrogate's refusal to impose a constructive trust for the benefit of objectants. In the resolution of this question, it must first be conceded that the evidence could sustain a finding that it fairly indicates an intention on the part of the decedent to transfer an interest in the farms to the objectants in return for their working the farms. While there is no express agreement to do so or a promise that he would transfer or devise the farms to objectants, such a promise could reasonably be inferred in view of the factual background and confidential relationship that existed between them. However, decedent did not appropriate property belonging to others but merely retained what was legally and rightfully his. It should be noted that objectants were reasonably well recompensed for performing their end of the bargain and, hence, it cannot be said that decedent was unjustly enriched by retaining title to the farm. Although the facts may reveal a case of unrealized expectations, we may not, without more, fashion a constructive trust. "It is not the promise only, nor the breach only, but unjust enrichment under cover of the relation of confidence, which puts the court in motion" (*Sinclair* v. *Purdy*, 235 N. Y. 245, 253). Decedent may well have had a moral obligation to give the property to objectants but such an obligation "is not enough to set a court in motion to compel the devolution of property in a certain way (*Amherst Coll.* v. *Ritch* [151 N. Y. 282], *supra; Oursler* v. *Armstrong*, 8 A D 2d 194, 197, citing *Wood* v. *Rabe* [96 N. Y. 414], *supra*, p. 421) " (*Oursler* v. *Armstrong*, 10 N Y 2d 385, 391). A constructive trust has been imposed where property is *parted with* on the faith of an oral promise (*Sinclair* v. *Purdy*, *supra*), but none may be imposed by one who has no interest in the property prior to obtaining a promise that such an interest will be given to him; and, since objectants' performance of working the farm was not unequivocally referable to the oral agreement they now claim, the agreement would be void as violative of the Statute of Frauds (General Obligations Law, § 5–703, subd. 3; *Burns* v. *McCormick*, 233 N. Y. 230; *Reoux* v. *First Nat. Bank of Glens Falls*, 17 A D 2d 915). A constructive trust is a "fraud-rectifying" trust rather than an "intent-enforcing" trust (*Saulia* v. *Saulia*, 31 A D 2d 640, mod. on other grounds 25 N Y 2d 80). (See, also, *Equity Corp.* v. *Groves*, 294 N. Y. 8, 13; Bogert, Trusts and Trustees [2d ed.], § 471, p. 7; 3 Scott, Trusts, § 462.1.) There has been no transfer of property here resulting in unjust enrichment under cover of any confidential relationship. Decedent merely retained what was rightfully his and, of course, did

not appropriate property which, at any time, belonged to others. In short, the confidential relation relied upon by objectants was not, as required by well-reasoned authorities (*Leary* v. *Corvin,* 181 N. Y. 222, 229; *Towner* v. *Berg,* 5 A D 2d 481, 485), the procuring cause of the conveyances of the farms to decedent.

We pause, however, to add that where one who is not entitled to a constructive trust and, as here, seeks to obtain the benefits of an executory understanding, he is entitled to the moneys expended in reliance on decedent's promise to convey (*Petrukevich* v. *Maksimovich,* 1 A D 2d 786), and this the Surrogate has fairly done by awarding objectants title to the farm equipment and cattle for which they paid from their own funds.

However, we disagree with the determination that a partnership existed between decedent and objectants and, as a corollary, that there should be an accounting therefor. Naturally, a partnership may result not only from an express agreement, but from circumstantial evidence as well (*Martin* v. *Peyton,* 246 N. Y. 213). An indispensable requirement of a partnership is " a mutual promise or undertaking of the parties to share in the profits of the business *and submit to the burden of making good the losses* " (*Matter of Steinbeck* v. *Gerosa,* 4 N Y 2d 302, 317). (See, also, *Matter of Bennett* v. *Pierce Ind.,* 28 A D 2d 944; *Reynolds* v. *Searle,* 186 App. Div. 202). Even if we were to conclude that the decedent and objectants are considered to have placed their money, efforts and skills in a common business, they have not divided the profits nor borne the losses in any proportion and objectants have not sustained their burden of showing the existence of a partnership. (*Matter of Steinbeck* v. *Gerosa, supra*; *Pattison* v. *Blanchard,* 5 N. Y. 186; *Matter of Manning* v. *Whalen,* 259 App. Div. 490, 492.) The evidence clearly establishes (and objectants concede) that missing are the indispensable essentials of a mutual promise to share the profits and an undertaking to assume the burden of making good the losses, without which no contract of partnership can be created under either the common law or statutory law of New York (43 N. Y. Jur., Partnership, § 33).

We are in agreement with the Surrogate's construction of the will as it relates to the continued operation and sale of the farms. After making provision for the creation of a trust for the benefit of all his children, the will provides as follows:

" V. The Trustee *is authorized to retain* in the trust any farm which I may own at the time of my death, so long as any one of my sons shall desire to use or occupy such farm. If my said son, who is using or occupying said farm shall advise the

Trustee that he no longer desires to occupy or use such property, then thereafter the Trustee *shall sell* and convey the same.

" VI. I presently own certain farm properties which are being operated by sons for me * * * Since *I desire that my Executor and Trustee shall continue to hold and operate said farm business* as a part of my estate and the trust funds herein created, I hereby vest my said Executor and Trustee with the following powers and authority * * *

" A. To retain and continue to operate the farming business for such period as the Executor or Trustee * * * may deem advisable * * *

" I. To sell or liquidate all or any part of said farming business at such time and price and upon such terms and conditions as the Executor or Trustee may determine. The Executor or Trustee is specifically authorized and empowered to make such sale to any employee of the business, or to any beneficiary hereunder." (Emphasis added.) The decree under review directs petitioner to retain the farm and to permit it to be used and occupied by the three objectants. During such time as the farm is so used and occupied, it also provides that only such portion of the property can be sold which is necessary to provide sufficient moneys to pay inheritance taxes, debts and expenses of administration. The Surrogate correctly construed the intent of the testator " gleaned not from a single word or phrase but from a sympathetic reading of the will as an entirety " (*Matter of Fabbri*, 2 N Y 2d 236, 240) and it is clear that the dominant purpose or plan of distribution indicated an intent that the farm be held in trust as long as any one of the objectants chose to use or occupy the farm. We find controlling the language in *Spencer v. Childs* (1 N Y 2d 103, 107) wherein Judge FULD, in defining the meaning of " desire " stated that while ordinarily it was to be read as precatory, the word " will be taken to connote a hope or a command depending on whether the author ' meant by them simply to advise or inform a discretion which is vested in somebody or to control or direct a certain disposition.' (7 Warren's Heaton on Surrogates' Courts [6th ed., 1951], p. 184.) In seeking an answer to the question, the testator's intent and meaning are to be gathered, not alone from the language and terms of the instrument itself, but also from the conditions and circumstances extrinsic to it. (See *Collister* v. *Fassitt*, 163 N. Y. 281, 286; see, also, 3 Page on Wills [3d ed., 1941], § 1179.) ". Here, the document itself provides ample support for the intent found by the Surrogate, and the determination

is further buttressed by the decedent's declaration as well as the factual background surrounding the operation of the farm; and, since all canons of construction are subordinate to the prime consideration of the testator's intention (*Matter of Larkin*, 9 N Y 2d 88, 91), we agree with the construction placed on the will, considered in its entirety.

The decree should be modified by deleting so much therefrom as (1) declares that a partnership existed among decedent and objectants and (2) directs that there be an accounting of the assets and profits thereof, and as so modified, it should be affirmed.

DEL VECCHIO, J. P., MARSH, WITMER and CARDAMONE, JJ., concur.

Decree unanimously modified on the law and facts in accordance with the opinion and as modified affirmed, with costs to all parties appearing separately and filing separate briefs, payable out of the estate.