204

SECURITY PACIFIC MORTGAGE AND
REAL ESTATE SERVICES, INC.,
Plaintiff–Appellee,

v.

The REPUBLIC OF the PHILIPPINES,
Defendant–Appellee,

Canadian Land Company of America,
N.V., also known as Canadian Land
Company of America, Inc., NYL, Inc.,
formerly known as Greatneckers, Inc.,
doing business as The New York Land
Company; NYL Properties, Inc.; the
People of the State of New York; the
City of New York; Irving Haase & Co.,
Inc.; Lombard Odier & Cie, Defen-
dants,

Nico Construction Company, Inc.,
Intervenor–Appellant.

No. 808, Docket 91–7849.

United States Court of Appeals,
Second Circuit.

Argued Feb. 12, 1992.

Decided April 24, 1992.

Eugene Mittelman, New York City (Kenneth P. Horowitz, Dreyer and Traub, of counsel) for intervenor-appellant.

Edward N. Meyer, New York City (Joseph A. DiBenedetto, Jonathan H. Freiberger, Gregory M. Kobrick, Winston & Strawn, of counsel) for plaintiff-appellee Security Pacific Mortg. and Real Estate Services, Inc.

Jeffrey J. Greenbaum, New York City (James M. Hirschhorn, Brian K. Valentine, Sills Cummis Zuckerman Radin Tischman Epstein & Gross, of counsel) for defendant-appellee The Republic of the Philippines.

Before: FEINBERG, TIMBERS and MINER, Circuit Judges.

MINER, Circuit Judge:

Intervenor-appellant Nico Construction Company, Inc. appeals from an order entered on July 30, 1991, in the United States District Court for the Southern District of New York (Leval, *J.*) denying, *inter alia,* its motion to intervene in this foreclosure action to recover damages for work performed during the pendency of the foreclosure litigation. By the same order, the district court confirmed the Report of Sale of the Special Master in charge of the foreclosure sale. Nico made several previous attempts to intervene to assert its claim to payment for renovating the premises that were the subject of the foreclosure action. It appeals only the denial of its final motion to intervene, which came on the eve of the district court's confirmation of the sale. Nico sought intervenor status in order to press its claim to have an equitable lien or constructive trust imposed in its favor on the rents and profits collected during the pendency of the action. In the alternative, Nico claimed that its work constituted receivership expenses to be paid out of the collected rents and profits prior to other claims on the funds.

The district court rejected all of Nico's theories of recovery, finding no equitable lien, no basis for the imposition of a constructive trust, and no receivership from which Nico could recover for the work performed. Upon concluding that Nico had no possibility of recovery, the district court denied the motion to intervene as moot. Nico argues on appeal that the requisite

intent to create an equitable lien existed because of a promise by the property's owner after this action commenced that Nico would be paid from the rents and profits collected during pendency of the action. The argument is also made that equity requires that a constructive trust for Nico's benefit be imposed upon the rents and profits collected. Nico also contends that the system by which the district court administered the property during pendency of the foreclosure action constituted a receivership in all but name, entitling Nico to recover, as expenses of that receivership, the monies owed for its work. Thus, Nico argues, it established the requisite interest in the property underlying the lawsuit and was entitled to intervene as a matter of right. We hold that Nico failed to show a cognizable interest in this litigation on the grounds urged and affirm the decision of the district court.

## BACKGROUND

Plaintiff-appellee Security Pacific Mortgage and Real Estate Services, Inc. brought this action to foreclose its $60 million first mortgage encumbering the Crown Building, located at 730 Fifth Avenue, New York City. The building already was the subject of litigation initiated by the Republic of the Philippines, defendant-appellee in this action, in a separate action seeking to impose a constructive trust over various properties previously owned by former Philippines President Ferdinand Marcos. The properties were owned and controlled for Marcos through defendant Canadian Land Company of America and its managing agent, defendant The New York Land Company. Joseph and Ralph Bernstein controlled New York Land, which managed the properties.

In the constructive trust action, the Philippines moved for the appointment of a receiver to collect rents and profits generated by all the properties involved, including the Crown Building, while the litigation was pending. The district court in that action never appointed a receiver, but instead designated Cushman & Wakefield, Inc. as "Special Property Advisor" to ad-

vise it with respect to "all expenditures, actions and transactions involving the management, operation and leasing of the properties and all assets relating thereto." Canadian Land, through New York Land, continued to manage the properties and collect rents and profits, but every decision relating to the management of the properties had to be submitted in the form of a proposal for court approval. The Special Property Advisor reviewed each proposal and advised the district court, which either approved or disapproved the proposal submitted.

Shortly thereafter, in this action, Security Pacific moved for the appointment of a receiver to collect the Crown Building rents and profits, but the district court never ruled on this motion. Rather, the parties agreed, for purposes of this action, to rely on the Special Property Advisor system, adopted in the action brought by the Philippines, to monitor and control Canadian Land's management of the Crown Building. As the foreclosure sale drew near, however, Security Pacific renewed its motion to have a receiver appointed in case a deficiency resulted after the sale. The motion was unopposed and the court eventually appointed a receiver on April 3, 1991, making a *nunc pro tunc* appointment, effective January 28, 1991. William A. White was appointed receiver. His sole task was to accept from Canadian Land all rents and profits generated by the Crown Building between January 28, 1991 and the closing of the foreclosure sale, and to turn those funds over to the Special Master in charge of the sale for disbursement.

Canadian Land had entered into a contract with Nico for the maintenance and repair of the Crown Building before either action was commenced. Canadian Land paid Nico for the work performed prior to the litigation. Once these actions were commenced, Nico apparently expressed concern to Canadian Land over who would pay for any future work. Canadian Land allegedly assured Nico that payment would come from the rents and profits collected during the actions. Nico continued renovations at Canadian Land's request after the suits began. Canadian Land never paid

Nico for this work, nor did it seek the required court approval to do so. Nico sets the value of the uncompensated work at $2,076,354.47. Nico filed mechanic's liens against the Crown Building, but took no other action. Both Security Pacific and the Philippines previously had filed notices of pendency.

The foreclosure sale finally took place on February 8, 1991. The winning bid of $93,-605,000.00 left a deficiency of $1,931,-418.79, after payment of costs and expenses of sale. The Special Master oversaw the closing on April 4, received the monies from the receivership, and issued the Report of Sale. Nico attempted to intervene prior to the closing, and again after issuance of the Report of Sale. The district court denied both motions. Security Pacific then moved for confirmation of the Report of Sale, which several of the defendants opposed. At the same time, Nico made its third motion to intervene, opposing confirmation of the Report of Sale and asserting its claims. The district court issued an order confirming the Report of Sale, denying Nico's motion to intervene to assert a claim to any funds from the sale or receivership, and ordering that the deficiency be satisfied from the receivership funds. Only Nico appealed.

## DISCUSSION

### I. *Nico's Proposed Intervention*

■ Decisions to permit intervention fall within the trial court's sound discretion and will be overturned only for an abuse of discretion. *Farmland Dairies v. Comm'r of N.Y. Dep't of Agriculture*, 847 F.2d 1038, 1043–44 (2d Cir.1988). Intervention as a matter of right under Federal Rule of Civil Procedure 24(a)(2) is permitted when the party proposing to intervene meets the following requirements: (1) the motion to intervene must be timely filed; (2) the party must demonstrate an interest in the property or transaction which is the subject of the underlying action; (3) the party must show that a prejudice to that interest will result if intervention is not permitted; and (4) the applicant's interest must not be adequately protected by any of the existing parties. *Farmland Dairies*, 847 F.2d at 1043. "Failure to satisfy *any one* of these requirements is a sufficient ground to deny the application." *Id.*

As a basis for its proposed intervention, Nico attempts to demonstrate an interest in the rents and profits collected during the course of the foreclosure action. Nico first seeks to show the requisite interest by arguing for an equitable lien or constructive trust imposed in its favor on the rents and profits. Failing that, Nico argues that its work constitutes expenses of either the receivership created by the district court in April 1991 or the receivership Nico contends existed under the system utilizing the Special Property Advisor. Nico claims to have additional causes of action, but admits that these other causes can be brought in a separate action and thus are not grounds for intervention as of right. Given this situation, if Nico cannot prevail on the equitable lien, constructive trust, or expenses of receivership theories, it has no interest relating to the property underlying the foreclosure action because its remaining claims are concededly unrelated to this suit. Without the required interest, Nico may not intervene as of right. *Id.* at 1043 (citing Fed.R.Civ.P. 24(a)(2)). We find that none of Nico's theories entitles it to recovery, and therefore conclude that intervention properly was denied.

### A. Equitable Lien

■ New York law permits the imposition of an equitable lien on property if there is an express or implied contract, meeting certain requirements, concerning the property. *James v. Alderton Dock Yards*, 256 N.Y. 298, 303, 176 N.E. 401 (1931); *see Datlof v. Turetsky*, 111 A.D.2d 364, 365, 489 N.Y.S.2d 353, 354 (2d Dep't 1985); *Thorne Real Estate, Inc. v. Nezelek*, 100 A.D.2d 651, 652, 473 N.Y.S.2d 82, 83 (3d Dep't 1984). The contract must identify the property directly, or describe the property in such a way as to make identification possible, and must clearly state the parties' intention that the identified property be "held, given or transferred as security for [an] obligation." *James,*

256 N.Y. at 303, 176 N.E. 401; *see also Datlof,* 111 A.D.2d at 365, 489 N.Y.S.2d at 354. An equitable lien may be imposed on land, chattels, or a certain fund, but a mere promise, whether parol or written, to satisfy a debt from a "designated fund" does not support creation of an equitable lien on that fund. *James,* 256 N.Y. at 303, 176 N.E. 401; *Datlof,* 111 A.D.2d at 365, 489 N.Y.S.2d at 355.

■ Thus, in establishing an equitable lien, plaintiff must show a particular agreement by defendant to confer a security interest in the property at issue. *James,* 256 N.Y. at 303, 176 N.E. 401; *Datlof,* 111 A.D.2d at 365, 489 N.Y.S.2d at 355. "[P]laintiff's mere expectation [of payment], however sincere, is insufficient to establish an equitable lien." *Scivoletti v. Marsala,* 61 N.Y.2d 806, 809, 473 N.Y.S.2d 949, 950, 462 N.E.2d 126 (1984). Without this type of specific contract creating a confidential relationship, the parties have merely contracted at arms length, and the plaintiff has no claim to an interest in specific property. *James,* 256 N.Y. at 303–04, 176 N.E. 401; *see Matco Electric Co. v. Plaza Del Sol Constr. Corp.,* 82 A.D.2d 979, 980, 440 N.Y.S.2d 407, 409 (3d Dep't 1981). A plaintiff without the promise of an interest in particular property must enforce his rights under the contract and cannot rely on an equitable lien. *James,* 256 N.Y. at 303, 176 N.E. 401; *Datlof,* 111 A.D.2d at 365–66, 489 N.Y.S.2d at 355.

■ In this case, Nico and Canadian Land entered into a contract for the work Nico was to (and did) perform on the Crown Building. The terms of the contract in no way identified the Crown Building or the rents and profits generated by the building as security for payment for the work performed. This type of arms length contract, standing alone, is insufficient to support a claim for an equitable lien. *Matco Electric,* 82 A.D.2d at 980, 440 N.Y.S.2d at 409; *see Thorne Real Estate,* 100 A.D.2d at 652, 473 N.Y.S.2d at 83 (agreement creating only "personal obligation" between contracting parties insufficient for equitable lien). The initiation of the foreclosure action by Security Pacific in and of

itself did not alter the terms of the contract. Nico was free to file mechanic's liens against the Crown Building and in fact did so. These mechanic's liens were filed after Security Pacific filed a notice of pendency, *see* N.Y.Civ.Prac.L. & R. § 6501 (McKinney 1980), and hence only entitled Nico to share in any surplus resulting from the sale. As there was no surplus, Nico could not recover by way of the mechanic's liens. *Id.* (incumbrancer filing after notice of pendency bound by foreclosure proceedings and results of sale). Nico's equitable lien theory cannot stand on the contract alone.

■ Nico claims that after the foreclosure action was commenced, Canadian Land promised that Nico would be paid out of the rents and profits collected during the foreclosure action. While this promise would seem, at first glance, to create the necessary security interest in the rents and profits to support an equitable lien, closer examination reveals that it does not. In the first place, it is questionable whether Canadian Land even had the power to make such an agreement. Under the terms for managing the property contained in the district court's order, Canadian Land had no power to make such a promise without court approval. Nico admits that Canadian Land neither sought nor obtained the required approval from the district court in this action. While the district court did authorize some work on an emergency basis, those orders were issued in the Philippines action and did not specifically denominate Nico as the recipient of payment. Nico itself did not seek or obtain authorization from the district court to perform the work or to be paid from the rents and profits fund. Therefore, even if Canadian Land promised payment from the collected rents and profits, an enforceable agreement was not created.

■ In any event, a promise like Canadian Land's is not specific enough to form the contractual foundation necessary to support an equitable lien under New York law. The original contract between Canadian Land and Nico failed to designate any property in which Nico would obtain a se-

curity interest. As Nico's right to payment was unsecured under the terms of the initial contract, the alleged subsequent representation by Canadian Land constitutes a mere promise to pay the debt incurred under the contract from a designated fund, i.e. the rents and profits collected during the foreclosure action. Such a promise, whether written or parol, does not operate to create an equitable lien upon the fund. *Datlof*, 111 A.D.2d at 365–66, 489 N.Y.S.2d at 355 (promise to pay debt out of proceeds of sale not sufficient to create equitable lien in proceeds); *James*, 256 N.Y. at 303–04, 176 N.E. 401. Thus, the asserted interest of Nico in the foreclosure action cannot support intervention.

## B. Constructive Trust

"Generally, a constructive trust may be imposed when property has been acquired under such circumstances that the holder of legal title may not in good conscience retain the beneficial interest therein." *Scivoletti v. Marsala*, 97 A.D.2d 401, 402, 467 N.Y.S.2d 228, 230 (2d Dep't 1983), *aff'd*, 61 N.Y.2d 806, 473 N.Y.S.2d 949 (1984). A constructive trust will not be imposed in favor of a party "who ha[d] no interest in the property prior to obtaining a promise that such interest will be given to him." *Id.* (quoting *Matter of Wells*, 36 A.D.2d 471, 474, 321 N.Y.S.2d 200, 205 (1971), *aff'd*, 29 N.Y.2d 931, 329 N.Y.S.2d 322, 280 N.E.2d 95 (1972)). In this case, Nico had no interest in the rents and profits collected prior to obtaining the alleged promise from Canadian Land that the funds would be used to pay for the work performed. Nor did Nico have a mechanic's lien or other interest in the Crown Building when the promise allegedly was made. Nico's only interest even remotely related to the Crown Building was in receiving payment under its contract with Canadian Land. The contractual promise to pay does not give Nico any interest in either the building or the rents and profits derived therefrom. Thus, Canadian Land's alleged subsequent promise to pay Nico from the rents and profits cannot form the basis for a constructive trust because Nico had no prior interest in the property. *Id.*

Moreover, a party seeking to establish a constructive trust ordinarily must show, among other things, a confidential or fiduciary relationship between the parties. *Id.; see Golden Budha Corp. v. Canadian Land Co. of America*, 931 F.2d 196, 202 (2d Cir.1991); *Bennett v. John*, 151 A.D.2d 711, 711, 543 N.Y.S.2d 143, 144 (2d Dep't 1989); *Matco Electric*, 82 A.D.2d at 980, 440 N.Y.S.2d at 408–09. Nico fails to meet this requirement as well. As discussed in the equitable lien context, the contract between Canadian Land and Nico resulted from arms length bargaining, and nothing indicates an intent to create a fiduciary or confidential relationship at the time of contracting. *Bennett*, 151 A.D.2d at 711, 543 N.Y.S.2d at 144 (contract to sell insufficient to establish confidential or fiduciary relationship); *Matco Electric*, 82 A.D.2d at 980, 440 N.Y.S.2d at 408–09 (contract for construction work does not meet confidential or fiduciary relationship requirement).

Strict adherence to the confidential or fiduciary relationship elements of a constructive trust is not necessary when a party holds "property under such circumstances that in equity and good conscience he ought not to retain it." *Golden Budha*, 931 F.2d at 202 (quoting *Simonds v. Simonds*, 45 N.Y.2d 233, 242, 380 N.E.2d 189, 194, 408 N.Y.S.2d 359, 364 (1978) and *Miller v. Schloss*, 218 N.Y. 400, 407, 113 N.E. 337, 339 (1916)). Thus, where a party is unjustly enriched, a court sitting in equity may impose a constructive trust, even though no confidential or fiduciary relationship exists. *Golden Budha*, 931 F.2d at 202; *see Simonds*, 45 N.Y.2d at 242, 380 N.E.2d at 194, 408 N.Y.S.2d at 364. Here, however, there is no basis for the imposition of a constructive trust under the "equity and good conscience" rule. Entitlement to the monies sought by Nico is established by mortgage foreclosure rules of priority. Thus, Security Pacific will not take the rents and profits in circumstances where good conscience dictates that it ought not to keep them, nor will it be unjustly enriched by the funds belonging to Nico. Because Nico cannot establish any basis for a constructive trust, that remedy does not give Nico such a cognizable interest in the

underlying litigation as to justify intervention.

C. Expenses of Receivership

Under New York Law, when a foreclosure sale results in a deficiency, "the court shall direct that all moneys remaining in the hands of a receiver of the rents and profits appointed in the action, *after the payment of* the receiver's fees and *the expenses of the receivership*," be paid to the mortgagee to cover the deficiency. N.Y. RPAPL § 1371(4) (McKinney 1979) (emphasis added). Relying on this language, Nico asserts that the work it performed on the Crown Building constitutes "expenses of the receivership", entitled to priority payment ahead of the deficiency. For there to be "expenses of the receivership", a court must create a receivership, empowering the receiver to incur expenses of the type for which reimbursement is sought. The appointment of a receiver is discretionary, *see* N.Y.Civ. Prac.L. & R. § 6401(a) (McKinney 1980), and, under appropriate circumstances, the court may deny the request for a receiver, even if the parties agree to the appointment. *Mancuso v. Kambourelis*, 72 A.D.2d 636, 637, 421 N.Y.S.2d 130, 131 (3d Dep't 1979); *see also 366 Fourth Street Corp. v. Foxfire Enters.*, 149 A.D.2d 692, 692, 540 N.Y.S.2d 489, 489 (2d Dep't 1989); *Clinton Capital Corp. v. One Tiffany Place Developers, Inc.*, 112 A.D.2d 911, 912, 492 N.Y.S.2d 427, 428 (2d Dep't 1985). As a court-created entity, a receiver has only those powers provided for in the appointment order and may perform only those acts expressly authorized by the appointing court. *Daro Indus. v. RAS Enters.*, 44 N.Y.2d 969, 970, 408 N.Y.S.2d 329, 329, 380 N.E.2d 160 (1978) (citing N.Y.Civ. Prac.L. & R. § 6401(b)).

In this action, Nico stakes a claim to a portion of the rents and profits collected by the receivership created by the district court on April 3, 1991, effective as of January 28, 1991. Nico makes this argument even though it ceased performing work on the Crown Building in May 1990, well before the appointment of the receiver, or the effective date of the receivership. Nico cites no New York law, nor have we

found any, allowing it to participate in the rents and profits collected by a receiver who neither requested nor approved any of Nico's endeavors.

Also fatal to Nico's contention is the limited authority given the receiver by the district court. The receiver's only power was to collect rents and profits from Canadian Land and turn them over to the Special Master. Since the receiver lacked authorization to incur *any* expenses, much less maintenance and repair costs, he could not enter into an enforceable agreement with Nico. *See id.* at 970, 408 N.Y.S.2d at 329, 380 N.E.2d 160. Thus, even if the receiver had acted outside his authority and sanctioned the expenses, which he did not, Nico would still have no claim to the receivership funds.

Nico alternatively argues that the Special Property Advisor system set up by the district court to assist the court in administering the Crown Building was a receivership in all but name. Nico contends that, in combination, the Special Property Advisor, Canadian Land, and the district court functioned like a receiver, because the Special Property Advisor oversaw management of the property like a receiver, Canadian Land collected the rents and profits and managed the property like a receiver, and all of this was subject to court approval. Therefore, Nico characterizes its work during this period as expenses of that receivership, payable ahead of the deficiency.

Nico's argument, while interesting, is not persuasive. The district court had before it a motion to create a receivership in this action, but decided to rely on the Special Property Advisor system already in place from the Philippines action. The Special Property Advisor was not appointed to be a receiver, nor did the system set up around the Special Property Advisor establish some sort of de facto or constructive receivership. Rather, it merely provided the district court with an efficient, effective means to monitor and control the property and Canadian Land's management during the course of the foreclosure action.

The district court was not required to appoint a receiver under the circumstances

212

revealed here, and we previously approved the district court's use of the Special Property Advisor system on appeal in the Philippines action. *See Republic of Philippines v. New York Land Co.*, 852 F.2d 33, 36 (2d Cir.1988). We see no reason to do otherwise here. *Cf. East New York Savings Bank v. Carlinde Realty Corp.*, 51 A.D.2d 989, 989, 381 N.Y.S.2d 101, 102 (2d Dep't 1976) (trial court said to have discretion to terminate receivership and substitute defendant to "receive all rents in trust, *inter alia* for the maintenance and operating expenses of the building"). In affirming the appointment, we noted that the Special Property Advisor was far less intrusive than a receiver because its role was "essentially to monitor the management of the buildings and advise the court." *Republic of Philippines*, 852 F.2d at 36. The district court, we found, retained the authority generally delegated to receivers because its order "require[d] that no payments or transfers be made without court approval." *Id.* With this regime in place, there was no receivership from which expenses could be generated or paid. Nico's source of payment in this case was the district court itself, not a receiver. Thus, Nico fails to establish an interest in the rents and profits collected during the pendency of this case.

Like the district court, we can find no avenue of recovery for Nico in this action. Without a cognizable claim to the rents and profits, Nico has no interest to protect relevant to the underlying litigation. Consequently, the district court did not abuse its discretion by denying Nico's motion to intervene.

Finally, we find no basis to award the sanctions sought by Security Pacific against Nico for bringing this appeal.

## CONCLUSION

The order of the district court denying Nico Construction Company's motion to intervene is affirmed.